UNITED STATES of America, Plaintiff,

Cynthia Fletcher, et al,
Plaintiff-Intervenors,

v.

STATE OF MISSISSSIPPI, et al
Simpson County School District,
Defendants.

Civ. A. No. J–4706(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 3, 1986.

George Phillips, U.S. Atty., Jackson, Miss., Nathaniel Douglas, Jay P. Heubert, Litigation Section, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Suzanne Griggins, Mendenhall, Miss. and Charles H. Ramberg, Jackson, Miss., for plaintiff-intervenors.

W. Terrell Stubbs, Mendenhall, Miss., James A. Becker, Watkins & Eager, Heber Ladner, Jr., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This school desegregation suit was initiated in July 1970 by the United States. In August 1970, the court ordered implementation of a school desegregation plan by the defendant, Simpson County School Board. In August 1983, this court entered a consent decree governing student transfers and employment standards, ordering *inter alia* adoption of objective criteria for use in all personnel decisions. This action is presently before the court on motion of plaintiff intervenors to compel enforcement of the 1983 consent decree.[1] Based on the testimony of witnesses and the exhibits admitted into evidence at a hearing on plaintiff intervenors' motion, the court makes the following findings of fact and conclusions of law.

Under the 1983 consent decree, Simpson County School Board was to offer Archie Skiffer "the first available position at Magee or Mendenhall School as Athletic Director and Head Coach, or the second such position at West Union School, whichever comes first." According to the United States and plaintiff intervenors, the "Head Coach" position to which Skiffer is entitled is Head Football Coach. Defendant argues that the consent decree requires that Skiffer be offered any head coaching position. Skiffer has been appointed Head Track Coach at Mendenhall High School for the 1986–87 school year and the defendant takes the position that that appointment partially fulfills its obligation under the consent decree.

■ Resolution of this issue requires interpretation of the consent decree. The United States Supreme Court has stated: "Consent decrees and orders have many of the attributes of ordinary contracts, [and] should be construed basically as contracts." *United States v. ITT Continental Baking Company,* 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975). A contract is ambiguous "when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction." *Northshore Laboratories Corp. v. Cohen,* 721 F.2d 514, 519 (5th Cir.1983). Whether a document is ambiguous is a question of law. *Paragon Resources v. National Fuel Gas Distribution Corp.,* 695 F.2d 991, 995 (5th Cir.1983). The court is of the opinion that the decree's provision regarding Skiffer is ambiguous in light of the circumstances and, therefore, looks to extrinsic evidence to interpret its terms.[2] *See Eaton v. Courtaulds of North America, Inc.,* 578 F.2d 87, 91 (5th Cir.1978).

At the time the consent decree was issued, the positions of Head Football Coach and Athletic Director at Magee, Mendenhall and Simpson Central were historically held at each school by the same person. The only exception was in 1978 and 1979 when Archie Skiffer was Head Football Coach and not Athletic Director at Simpson Central. Skiffer was not offered the head football coaching position in 1980 upon recommendation of his principal, a black. In 1983, when the consent decree was executed, Skiffer was head coach for the girls' junior varsity basketball team at Simpson Central. That position has been eliminated by consolidation, leading to the appointment of Skiffer as Head Track Coach at Mendenhall. The United States and plain-

---

1. By agreed order, the parties settled the other issues raised by plaintiff intervenors' motion, including partial consolidation of the school district, creation of assistant principal positions at Magee and Mendenhall High Schools as well as the majority of personnel issues. Additionally, plaintiff intervenors agreed not to seek attorney fees for issues resolved by the order.

2. Accordingly, the court overrules objections made at trial to testimony regarding the negotiations leading up to adoption of the consent decree.

tiff intervenors argue that these facts lead to the conclusion that Archie Skiffer is entitled to the position of Head Football Coach rather than any other coaching position. The court, however, is of the opinion that these facts are not dispositive of the ambiguous language.

At trial, participants in the negotiations leading up to the adoption of the consent decree testified regarding discussions relating to Archie Skiffer. Witnesses for plaintiff intervenors stated that they thought Head Coach and Athletic Director meant Head Football Coach. Artis Fletcher recalled that the parties discussed the fact that athletic directors were historically head football coaches. The testimony of witnesses for the defendant was much more specific. One witness, Cloma Mangum, refreshed her recollection by referring to notes she made during the negotiation sessions. All defense witnesses clearly recalled that the position of Head Football Coach was discussed but rejected by defendants. Defendant then proposed that Skiffer be offered a head coaching position in any sport. According to the defendant's witnesses, this proposal was adopted. Following entry of the consent decree, defendant established a salary schedule which showed separate salaries for head football coaches and athletic directors, further supporting defendant's contention that the two positions were in fact separate. The court finds that the testimony of the witnesses for defendant is more credible because it is supported by their specific recollections of the negotiation sessions and because it is reflected in the language of the consent decree. Accordingly, this court is of the opinion that Archie Skiffer is not entitled, under the 1983 consent decree, to a Head Football Coach position.

█ The remainder of plaintiff intervenors' claims focus on the portion of the consent decree wherein

[t]he School District agrees to employ clear, objective standards in making all personnel decisions, to advertise for and recruit qualified applicants, to fill all positions by hiring, transferring or promoting qualified persons in a non-discriminatory manner, and to compensate all employees on the basis of explicit, objective, non-discriminatory criteria. In making employment decisions, the objective shall be to attract and retain the most highly qualified personnel without regard to race.

Plaintiff intervenors object to the reduction-in-force policy adopted by the Board in July 1985. According to the policy,

[w]hen a reduction in staff is necessary, contracts for an excess of staff shall be withheld for persons by certificate area earning lowest composite scores according to the procedure described herein. This procedure has been established to enable the district to maintain its most effective teaching staff annually.

This particular policy was adopted following review by Mrs. Lillie Hardy, Personnel Director, of reduction-in-force policies in other school districts. The component scores are comprised of four elements: seniority, performance, certification and staff development. The assessment of all criteria, except performance, is totally objective. Plaintiff intervenors object to the performance component on the ground that it is not sufficiently objective.

While the performance component of the policy does require subjective evaluation, it is apparently applied in an objective and non-discriminatory manner. It calls for the evaluator to rate numerically specific and discrete areas of a teacher's performance. Plaintiff intervenors object primarily to the situation of Aaron Thompson whose contract was not renewed after application of the reduction-in-force policy. Of the five band directors in the county, all received approximately the same score under the seniority, certification and staff development portions of the policy, although Thompson, the only black of the five, did have the highest score. Thompson, how-

ever, following evaluation by his principal, received the lowest score for performance.[3]

All of the band directors were evaluated by their principals, who were familiar with their abilities as teachers. Additionally, each teacher whose contract was not renewed by reason of application of the policy is entitled to rights extended by the Mississippi School Employment Procedures Act of 1977, thereby providing protection against discrimination. Defendant represented that it will soon begin using another evaluation form pursuant to the State Education Reform Act. The new form will include the use of standardized guidelines by evaluators, further lessening the impact of possible subjectivity. It should also be noted that application of the present reduction-in-force policy resulted in the non-renewal of the contracts of five employees, three blacks and two whites. Under such circumstances, the court is of the opinion that plaintiff intervenors' claim regarding the reduction-in-force policy and its application to Thompson must fail.

■ In August 1984, Clyde Rudd, a black remedial related teacher, applied for a counselor position at Mendenhall High School.[4] After the applications for the position were processed, a black ranked first, a white second and Rudd third. The job was offered to and accepted by the white applicant after the black principal at Mendenhall High did not recommend the black who had ranked first. Plaintiff intervenors apparently do not object to this situation.

Rudd later applied to transfer to a vacant position as counselor at Mendenhall Junior High School. Pursuant to the School Board's voluntary transfer policy,[5] Rudd completed an application and delivered it to the personnel director's office. The personnel director then contacted the Mendenhall Junior High principal who determined that Rudd would not be effective and instructed the personnel director to advertise the position. Five applications were received but, before a decision was made, the position was eliminated. Consequently, none of the applicants was offered the position. Thereafter, Superintendent Smith decided to eliminate the position held by Cliff Reed, who was one of two counselors at Magee, and create a new counselor position at Mendenhall High School. To fill the Mendenhall High School position, Smith utilized the involuntary transfer policy to move Cliff Reed from Magee to Mendenhall.[6]

In March 1985, due to funding cuts, one remedial related position was terminated. At that time, the reduction-in-force policy was being considered but had not yet been adopted by the Board. Smith considered the years of experience and certification of the teachers and determined that Rudd should not be renewed.

Contrary to arguments of plaintiff intervenors, the court finds that the counselor position at Mendenhall High School was eliminated. It was then recreated and

3. The court sustains plaintiffs' objections made at trial to questions regarding the performance of Thompson's band.

4. The court overrules objections made at trial to Lillie Hardy's testimony regarding Rudd's August 1984 application.

5. The Board's voluntary transfer policy provides as follows:

After discussing the desire to transfer with the principal, the staff member must make a written request to the superintendent, stating the reason for the request and the school to which the transfer is desired. The superintendent shall arrange for the staff member to meet with the principal of the school to which the transfer is requested. Based on the recommendation of both principals, the superin-

tendent subject to board approval, will give written notice to the person requesting the transfer as to the action taken.

6. The involuntary transfer policy reads as follows:

If any involuntary transfer is in the best interest of the district, in the opinion of the superintendent the superintendent will discuss the need for the transfer with the immediate supervisor of the person involved and the principal of the school to which the individual would be transferred. The superintendent, shall meet with the person involved, giving the reasons why the transfer is desirable and such transfer shall be made only on recommendation of Superintendent and approval of the Board. Noncompliance may result in loss of employment for the following year.

filled by Reed in an effort by the defendant to use its funds most effectively. The school district did this by using its involuntary transfer policy and by denying Rudd's request for a voluntary transfer. The court finds no discrimination in this situation and further concludes that the actions of Smith and the Board were motivated by an objective desire to fill positions in the most efficient manner. The need of such policies was made clear by witnesses for the defendants who testified that it is imperative that the Board be able to transfer personnel, particularly in times of budget reductions. The court is aware, however, that the voluntary and involuntary transfer policies of the Board carry the potential of masking discrimination in other situations. For that reason, defendants should promulgate procedures to be used when transferring personnel, voluntarily or involuntarily.[7]

■ Plaintiff intervenors further contend that Rudd is entitled to back pay as a result of the School Board's decision not to renew his contract. This decision was made prior to adoption of the reduction-in-force policy to which plaintiffs object because of its subjective elements. Here, Smith applied only the objective elements of the current reduction-in-force procedures and decided not to renew Rudd's contract because he ranked below the other personnel in terms of seniority and certification. The present reduction-in-force policy also provides recall rights for those terminated by the policy. Since this policy was not applied to Rudd, he is not entitled to recall rights. Accordingly, he is not entitled to back pay.

■ Under the 1983 consent decree, John Hardy was to be offered the position of Federal Projects Coordinator upon the retirement of Clarence Phillips. Phillips retired and the position was eliminated. Such a possibility was contemplated by the consent decree which provided that if the Federal Projects Coordinator position were down graded or eliminated, the school district would maintain Hardy's salary and offer him the choice between another supervisory position of comparable responsibility and a position as teacher of special education at Mendenhall. Hardy testified that he told Smith that he was satisfied with his current position. Phillips' duties were then spread among several people, including Elizabeth Yates, a white. The plaintiff intervenors contend that Phillips' position was not actually eliminated but was rather recreated and renamed and given to Yates. The change, according to plaintiff intervenors, constituted a promotion and is therefore covered by the consent decree. Plaintiff intervenors rely on *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir.1969), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 611, 24 L.Ed.2d 530 (1970), which defines demotion as

> any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, [or] (2) which requires a lesser degree of skill than did the assignment he held previously.

Plaintiff intervenors argue that, conversely, a promotion occurs when an employee is given greater responsibility or greater salary. Plaintiff intervenors' claim that Yates was promoted is simply not supported by the evidence.[8] Yates was given greater responsibility but not to such an extent as to constitute a promotion.[9] The testimony

---

**7.** The court recognizes that school district officials are entitled to the exercise of more discretion in the case of transfers of this nature than in other personnel decisions.

**8.** At trial, the court reserved ruling on the admissibility of the applications of persons seeking Phillips' position. Because the court concludes that that position was eliminated and further that it was not later filled by Yates, the

court sustains defendant's objection to its admission.

**9.** Plaintiff intervenors apparently contend that whenever a position is eliminated and the responsibility distributed among other employees, each affected employee must then reapply for the "new" position. The court recognizes that a significant change in responsibility may constitute a promotion; such, however, is not the case here. To implement plaintiff intervenors' theo-

showed that Phillips' responsibilities are now shared by several people, including all teachers who have taken over Phillips' testing duties. Yates did receive additional salary soon after the time that Phillips retired. This supplement was not, however, related to her additional responsibilities but was rather money to which she had been entitled for some time and had not been receiving.

A separate judgment shall be entered according to the local rules.

ry, without limits as it is, would wreak havoc in the workplace by precluding any semblance of